## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 03 B 35893 |
| | ) | Chapter 11 |
| BIG IDEA PRODUCTIONS, INC., | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BIG IDEA LIQUIDATING CREDITOR TRUST, f/k/a BIG IDEA PRODUCTIONS, INC., | ) ) ) | Adversary No. 07 A 00092 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAFECO INSURANCE COMPANY OF AMERICA, and LYRICK STUDIOS, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Safeco Insurance Company of

America ("Safeco") for summary judgment pursuant to Federal Rule of Bankruptcy

Procedure 7056, which incorporates by reference Federal Rule of Civil Procedure 56, on the

complaint filed by Walker Nell Consultants, Inc., not individually, but solely in its capacity

as the trustee of the plaintiff, Big Idea Liquidating Creditor Trust ("Creditor Trust") which

seeks declaratory judgment against Safeco and Lyrick Studios, Inc. ("Lyrick"). For the

reasons set forth herein, the Court grants the motion of Safeco for summary judgment. The

Court holds that the surety bond proceeds that are at issue in this dispute are subject to a prior

-2-

and superior claim of Safeco, as the surety, who paid those proceeds to Lyrick as judgment

creditor of the debtor Big Idea Productions, Inc. ("Big Idea"). The surety bond proceeds are

not property of the bankruptcy estate to be paid pursuant to the terms of the plan of

reorganization to other claimants, including the other unsecured creditors.


# I.  JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and

Internal Operating Procedure 15(a) of the United States District Court for the Northern

District of Illinois.  A bankruptcy court has jurisdiction to determine what constitutes

property of the bankruptcy estate. *Messina v. Am. Citrus Prods. Corp. (In re Messina)*, Adv.

No. 03 A 01803, 2003 WL 22319416, at *5 (Bankr. N.D. Ill. Sept. 29, 2003); *Knopfler v.

Schraiber (In re Schraiber)*, 97 B.R. 937, 942 (Bankr. N.D. Ill. 1989).  This is a core

proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  *All Am. Laundry Serv. v. Ascher (In re

Ascher)*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991).


# II.  APPLICABLE STANDARDS FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the

statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made

applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056.  Rule

56(c) reads in part:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show

-3-

       that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c). *See also Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th

Cir. 2003).

      The primary purpose of granting a summary judgment motion is to avoid unnecessary

trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916

F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir.

1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmen's Fed. Savs. & Loan Ass'n of

Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)). Where the material facts are not in dispute,

the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR

Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir.

1998).

      On a motion for summary judgment, "[t]he court has one task and one task only: to

decide, based on the evidence of record, whether there is any material dispute of fact that

requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation

omitted). Summary judgment is the "put up or shut up moment in a lawsuit, when a party

must show what evidence it has that would convince a trier of fact to accept its version of the

events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal

quotation omitted).

      In 1986, the United States Supreme Court decided a trilogy of cases that encourages

the use of summary judgment as a means to dispose of factually unsupported claims.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317

-4-

(1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322; *Matsushita*, 475 U.S. at 585-86.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 666-67 (7th Cir. 2005); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248; *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002). "'Factual disputes that are irrelevant or unnecessary will not be counted.'" *Fritcher*, 301 F.3d at 815 (*quoting Anderson*, 477 U.S. at 248). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990). The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065-66 (7th Cir. 2000); *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 364 (7th Cir. 2000).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (*quoting* FED. R. CIV. P. 56(c)). Once the motion is

-5-

supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 323; *Matsushita*, 475 U.S. at 587; *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production either by submitting affirmative evidence that negates an essential element of the non-moving party's claim or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See Union Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 213 (Bankr. N.D. Ill. 1993).

Local Bankruptcy Rule 7056-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, which deals with summary judgment motions, was modeled after LR56.1 of the Local Rules of the United States District Court for the Northern District of Illinois. Hence, the case law construing LR56.1 and its predecessor Local Rule 12 applies to Local Bankruptcy Rule 7056-1.

Pursuant to Local Bankruptcy Rule 7056, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the Rule requires the moving party to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the

-6-

record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056-1B.

The party opposing a summary judgment motion is required by Local Rule 7056-2 to respond ("7056-2 statement") to the movant's 7056-1 statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056-2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" Local Bankr.R. 7056-2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056-1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056-2B.

In the instant matter, Safeco filed a 7056-1 statement that complies with the Rule. It includes numbered paragraphs establishing undisputed facts with specific references to accompanying exhibits. In response, the Creditor Trust filed a 7056-2 statement that substantially complies with Local Rule 7056-2A(2)(a). It responded to each numbered paragraph in the 7056-1 statement.

### III.  UNDISPUTED FACTS AND BACKGROUND

Big Idea entered into a contract with Lyrick concerning the distribution of Big Idea's VeggieTales products. (Statement of Material Uncontested Facts ¶ 3; Resp. to Statement of

-7-

Material Uncontested Facts ¶ 3.)  On January 4, 2002, Lyrick sued Big Idea in the United

States District Court for the Northern District of Texas, Dallas Division ("District Court")

in Case No. 3:02-CV-0034-M for breach of the contract ("Lyrick Litigation"). (*Id.*) During

the Lyrick Litigation, Big Idea filed a motion for a preliminary injunction to prevent Lyrick

from distributing VeggieTales products. (Statement of Material Uncontested Facts ¶ 4; Resp.

to Statement of Material Uncontested Facts ¶ 4.)  The District Court granted the injunction

but required Big Idea to post a $500,000 bond for preliminary injunction (the "Bond") in the

event the District Court later determined Lyrick was wrongfully enjoined. (*Id.*)

On April 19, 2002, Big Idea entered into a General Indemnity Agreement ("Indemnity

Agreement") with Safeco to obtain Safeco as a surety on the Bond. (Statement of Material

Uncontested Facts Ex. D, p. 14, General Agreement of Indemnity.)  The Indemnity

Agreement required Big Idea to indemnify Safeco against all loss and expense incurred in

the event of execution on the Bond. (*Id.*)  Moreover, the Indemnity Agreement required Big

Idea to post collateral with Safeco upon Safeco's demand. (*Id.*)  On April 22, 2002, Big Idea

filed the Bond with the District Court, with Safeco as its surety on the Bond. (Statement of

Material Uncontested Facts Ex. D, p. 10, Bond for Preliminary Injunction.)

On April 28, 2003, the jury found for Lyrick in the Lyrick Litigation.  (Resp. to

Statement of Material Uncontested Facts Ex. 1, Final Judgment.) The District Court entered

a judgment for Lyrick in the amount of $10,306,346.28 on July 1, 2003. (*Id.*)  The District

Court found that Lyrick had been wrongfully enjoined and allowed Lyrick to draw on the

Bond, with the proceeds to be credited against the judgment. (Statement of Material

Uncontested Facts ¶ 7; Resp. to Statement of Material Uncontested Facts ¶ 7.)  On May 27,

-8-

2003, Safeco requested collateral or security from Big Idea but never received any. (Statement of Material Uncontested Facts ¶ 10; Resp. to Statement of Material Uncontested Facts ¶ 10.) On July 17, 2003, Safeco issued a check to Lyrick for the amount of the Bond, $500,000. (Resp. to Statement of Material Uncontested Facts Ex. 4, p. 20, Check from Safeco to Lyrick for $500,000.) Big Idea did not pay Lyrick any additional money under the judgment besides the $500,000 Bond proceeds Safeco paid. (Statement of Material Uncontested Facts ¶ 9; Resp. to Statement of Material Uncontested Facts ¶ 9.)

Safeco then sued Big Idea in the United States District Court for the Northern District of Texas, Dallas Division, in Case No. 3:03-CV-1561-K to recover the $500,000 as provided in the Indemnity Agreement ("Safeco Litigation"). (Resp. to Statement of Material Uncontested Facts Ex. 3, Pl.'s Original Compl.) While the Safeco Litigation was pending, Big Idea appealed the judgment in the Lyrick Litigation to the Fifth Circuit Court of Appeals (the "Fifth Circuit") on August 18, 2003. (Statement of Material Uncontested Facts ¶ 11; Resp. to Statement of Material Uncontested Facts ¶ 11.) On September 2, 2003, Big Idea filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. (Statement of Material Uncontested Facts ¶ 12; Resp. to Statement of Material Uncontested Facts ¶ 12.)

The filing of the bankruptcy petition stayed both the Lyrick Litigation and the Safeco Litigation. Lyrick filed a motion for relief from stay with this Court to allow the appeal in the Lyrick Litigation to proceed. On March 2, 2004, the Court granted the motion and authorized the Official Committee of Unsecured Creditors to prosecute the appeal for Big Idea. (Statement of Material Uncontested Facts ¶ 13; Resp. to Statement of Material Uncontested Facts ¶ 13.) On November 24, 2004, the Court confirmed a plan of liquidation

-9-

and created the current party to this action, the Creditor Trust, the successor under the plan

to the Committee, who continued to prosecute the appeal. (Compl. ¶ 1; Ans. ¶ 1.) The

Safeco Litigation was administratively closed after Big Idea filed its bankruptcy petition and

Safeco filed general unsecured claims with the Court for the amounts Big Idea owes Safeco

that it paid to Lyrick under the Indemnity Agreement. (Compl. ¶ 14; Ans. ¶ 14; Resp. to

Statement of Material Uncontested Facts Ex. 6, Proof of Claim and 7, Proof of Claim.)

In the Lyrick Litigation appeal, the Fifth Circuit reversed the judgment for Lyrick on

August 5, 2005. *Lyrick Studios, Inc. v. Big Idea Productions, Inc.*, 420 F.3d 388 (5th Cir.

2005) (Statement of Material Uncontested Facts ¶ 14; Resp. to Statement of Material

Uncontested Facts ¶ 14.) Before the Fifth Circuit, Lyrick questioned Big Idea's standing to

obtain restitution of the amount Safeco paid to Lyrick. In response the Fifth Circuit stated:

> Early in the litigation, Big Idea obtained a preliminary
> injunction preventing Lyrick from distributing VeggieTales.
> After trial, the district court determined that this injunction
> was wrongfully issued and so permitted Lyrick to recover the
> entire $500,000 bond that [sic] been posted by Big Idea when
> it obtained the injunction. Big Idea now asks for restitution
> of that amount because the preliminary injunction was not, in
> fact, wrongfully issued. In response, Lyrick does not argue
> that restitution is unwarranted if its judgment is reversed.
> Instead, Lyrick argues that Big Idea does not have standing to
> request restitution; it contends that only the surety can seek
> this relief. Therefore, Lyrick asserts that a claim for
> restitution of the bond amount can only proceed in a separate
> lawsuit brought by the surety.
>
> Federal Rule of Civil Procedure 65(c) requires an applicant
> seeking a preliminary injunction to give security. If the party
> chooses to provide security through a bond, Rule 65.1 places
> certain requirements on sureties providing that bond. First,
> each surety is required to submit to the court's jurisdiction.
> Fed. R. Civ. P. 65(c). Additionally, "[t]he surety's liability

-10-

> may be enforced on motion without the necessity of an
> independent action." *Id.* Lyrick was willing to enforce the
> surety's liability in just this way. It would be inconsistent to
> permit Lyrick to recover the bond amount from the surety
> without filing a separate action but then, when Lyrick loses on
> appeal, to require the surety to bring a separate lawsuit for
> restitution of the same bond amount. Further, the surety
> already submitted to the court's jurisdiction when it posted
> the bond. Therefore, we vacate the order allowing Lyrick to
> execute on the bond and remand.

*Lyrick Studios, Inc.*, 420 F.3d at 396-97. On October 25, 2005, the Fifth Circuit denied

Lyrick's petition for rehearing. (Compl. ¶ 16; Ans. ¶ 16.) On April 3, 2006, the United

States Supreme Court denied Lyrick's petition for writ of certiorari. (*Id.*)

On remand, Safeco filed a motion to intervene in the Lyrick Litigation. (Compl. ¶

17; Ans. ¶ 17.) On December 15, 2006, the District Court ordered Lyrick to deposit the

$500,000 it had received from Safeco into the registry of this bankruptcy court for the Court

to determine how the $500,000 will be distributed. (*Id.*) The Creditor Trust then filed the

instant complaint for declaratory judgment asking the Court to find that Big Idea's

bankruptcy estate has an interest in and the prior claim to the $500,000, and that Safeco is

merely one of the estate's unsecured creditors. (Statement of Material Uncontested Facts Ex.

A, Compl. for Declaratory Judgment.) Safeco, in its answer, contends that the bankruptcy

estate has no interest in the $500,000, and that it is entitled to the money as a surety pursuant

to its rights under the Indemnity Agreement and applicable Texas law. On March 12, 2007,

Safeco filed a motion for summary judgment. As the facts are not materially in dispute,

summary judgment is an appropriate resolution of this issue.

-11-

## IV. DISCUSSION

Safeco makes two basic arguments in support of its motion for summary judgment. First, Safeco argues that the Fifth Circuit directed Lyrick to make restitution of the $500,000 to Safeco. Second, Safeco argues that as a surety, Safeco is subrogated to the rights of its principal Big Idea, one of Big Idea's rights being the right to restitution of the $500,000. The Creditor Trust makes two counter-arguments in its opposition to Safeco's motion for summary judgment. First, the Creditor Trust argues that a surety may only recover from its principal any money paid on behalf of the principal. Second, the Creditor Trust argues that due to Safeco's actions, it would be unjust to allow Safeco to utilize the equitable right of subrogation. The Court finds the Fifth Circuit did not order restitution to Safeco. The Court does find, however, that Safeco as the surety has a right of subrogation to exercise Big Idea's right to restitution of the $500,000. The Court does not find that a surety under Texas law may only recover amounts paid from its principal. Finally, the Court finds that it would not be unjust to allow Safeco the equitable right of subrogation to claim the sum. Thus, the Court grants Safeco's motion for summary judgment.

Safeco first argues in its motion for summary judgment that the Fifth Circuit ordered Lyrick to make restitution of the $500,000 to Safeco. The Court flatly rejects this argument. The Fifth Circuit did not address the issue of whether Lyrick should make restitution to Big Idea or to Safeco. *Lyrick Studios, Inc.*, 420 F.3d at 396-97. Rather, the Fifth Circuit rejected Lyrick's contention that Safeco must bring a separate lawsuit to make a claim for restitution of the $500,000. The Fifth Circuit did not address the merits of Safeco's claim for restitution

-12-

in any way. *Id.* Therefore, the Fifth Circuit's opinion does not provide a mandate for the Court to distribute the $500,000 to Safeco.

Safeco's second and principal argument is that Safeco, through a right of subrogation to the rights of its principal Big Idea, has the right to restitution of the $500,000. The Court agrees that the $500,000 should be distributed to Safeco due to Safeco's right of subrogation to the rights of its principal, Big Idea. Section 541 of the Bankruptcy Code defines the property of a bankruptcy estate as "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This provision is broadly interpreted to include any legally enforceable right of the debtor. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983). The Seventh Circuit stated that "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). The Bankruptcy Code is silent on whether the surety bond proceeds should revert to the surety who paid those proceeds or whether the money should be subject to all claims in the priority established under the Code. Section 509 of the Code does not answer the narrow question at bar: can Safeco maintain a prior claim to the refunded bond proceeds it paid or is it relegated to share pro rata with the unsecured creditors in the remaining funds to be paid under the confirmed plan.

Under § 541, state law defines the legal and equitable property interests of the debtor. *Butner v. United States*, 440 U.S. 48, 55 (1979). This is because "[u]niform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by

-13-

reason of the happenstance of bankruptcy.'" *Id.* (quoting *Lewis v. Mfrs. Nat'l Bank*, 364 U.S.

603, 609 (1961)). While state law defines the debtor's property interests, whether a debtor's

particular interest is property of the estate under § 541 is a question of federal law. *Fisher*

*v. Apostolou*, 155 F.3d 876, 880 (7th Cir. 1998).

Here, as the Bankruptcy Code does not provide clear direction and the parties posted

the Bond with the Texas District Court, Texas state law is relevant to determining the rights

and claims of the Creditor Trust and Safeco in the $500,000 paid in that litigation. The

Supreme Court of Texas defines a surety as "a party who promises to answer for the debt of

another." *Crimmins v. Lowry*, 691 S.W.2d 582, 585 (Tex. 1985). Thus, Safeco, who posted

all of the Bond proceeds, is the surety of Big Idea as the principal. A surety who pays a

principal's debts has a right of subrogation. *Id.* Under Texas law, subrogation "has been

defined as 'a legal fiction by force of which an obligation, extinguished by payment made

by a third person, is treated as still subsisting for his benefit' or 'the procedure by which the

equitable rights of one person are worked out through the legal rights of another.'" *Interfirst*

*Bank Dallas, N.A. v. United States Fid. & Guar. Co.*, 774 S.W.2d 391, 397 (Tex. App. 1989)

(quoting *Texas Co. v. Miller*, 165 F.2d 111, 115 (5th Cir. 1947)). The right of subrogation

is not based on a contract but rather it is an equitable right that arises by operation of law.

*Interfirst Bank Dallas, N.A.*, 774 S.W.2d at 397. A surety who pays a creditor of the

principal is subrogated to all of the rights that creditor has to collect the debt from the

principal. *Crimmins*, 691 S.W.2d at 585. For instance, the Texas Business and Commerce

Code provides "(b) A surety who pays on a judgment...is subrogated to all of the judgment

creditor's rights under the judgment. A subrogated surety is entitled (1) to execution on the

-14-

judgment against the principal's property for the amount of his payment, plus interest and costs." Tex. Bus. & Com. Code § 34.04(b). Moreover, a surety can be subrogated not only to the rights of the creditor, but also to the rights of the principal on whose behalf the surety paid. *Interfirst Bank Dallas, N.A.*, 774 S.W.2d at 397-98; *St. Paul Fire & Marine Ins. Co. v. United States*, 370 F.2d 870, 872 (5th Cir. 1967).

For example, in *St. Paul Fire & Marine Ins. Co. v. United States*, the United States sued the principal and the surety on a bond. 370 F.2d at 871. The principal was a customs broker and did not appear in the lawsuit. *Id.* The surety wanted to join as third-party defendants the partnership for whom the principal worked. *Id.* The Fifth Circuit found that the surety was subrogated to the rights of both the United States as the creditor and the customs broker as the principal. *Id.* at 872. The court reasoned that the United States had no rights against the partnership so the surety could not sue the partnership through the rights of the United States. *Id.* at 873. The principal, on the other hand, was an employee of the partnership, so the court found it would be just for the surety to assert the rights of the principal against the partnership. *Id.*

One such right a principal may have is the right to restitution. A party who pays another pursuant to a judgment that is later reversed has the right to restitution of the amount paid. *Miga v. Jensen*, 214 S.W.3d 81, 88 (Tex. App. 2006).

Applying this analysis to the present case, Safeco, as a surety, is subrogated to the rights of Lyrick as the creditor and Big Idea as the principal. Under § 509(a), when Safeco paid Lyrick a portion of the District Court judgment it was subrogated to Lyrick's claim against Big Idea to that extent. However, § 509 does not answer the question of who has

-15-

priority to claim the monies paid when the Fifth Circuit reversed the District Court judgment and verdict. Like the creditor in *St. Paul Fire & Marine Ins. Co.*, Lyrick no longer has any rights against Big Idea under the jury verdict and the District Court judgment because the Fifth Circuit reversed Lyrick's favorable judgment and verdict. As a result of the reversal, Safeco would have no claim to the $500,000 by subrogation to Lyrick's rights. Using the equitable principles of *St. Paul Fire & Marine Ins. Co.* and *Interfirst Bank Dallas, N.A.*, however, Safeco is also subrogated to the rights of Big Idea. Big Idea had the right to restitution of the money paid on the judgment because the Fifth Circuit reversed the judgment. Safeco, through Texas subrogation principles, can claim Big Idea's right to restitution of the $500,000 Safeco paid to Lyrick pursuant to the judgment. Therefore, the Court finds the $500,000 should be distributed to Safeco due to Safeco's right of subrogation to Big Idea's right to restitution.

Bankruptcy law does not change this common sense result. The United States Supreme Court came to a similar conclusion in *Pearlman v. Reliance Insurance Co.*, where the debtor entered into a construction contract with the United States government. 371 U.S. 132, 133 (1962). Reliance executed surety bonds for the debtor required by the contract. *Id.* The debtor did not complete the project and filed for bankruptcy. *Id.* at 134. The surety, Reliance, had to pay some of the subcontractors the debtor had failed to pay. *Id.* After the project was completed by another contractor, the government turned over to the bankruptcy trustee some payments that the government withheld from the debtor pursuant to the terms of the contract. *Id.* The trustee asserted the payments were part of the bankruptcy estate, while the surety claimed the right to the payments because it had paid subcontractors on

-16-

behalf of the debtor. *Id.* The Court found that the surety had the right to the payments because the surety was subrogated to the rights of the subcontractors to whom the surety paid. *Id.* at 141-42. The surety had a property right in these payments separate from and outside of the debtor's bankruptcy estate. *Id.* at 136-37.

In another case, *In re Jones Constr. & Renovation, Inc.,* a surety paid subcontractors under a construction contract after the debtor contractor had failed to pay. 337 B.R. 579, 583 (Bankr. E.D. Va. 2006). The other party to the contract had retained some of the money owed to the debtor under the contract to secure the debtor's performance. *Id.* The court found that under the doctrine of equitable subrogation, the surety had a right to the money retained because the surety had paid subcontractors on the debtor's behalf. *Id.* The court further stated that the surety's rights to the retained money dated back to the surety's issuance of the bonds, before the debtor had filed for bankruptcy. *Id.* Therefore, the bankruptcy estate did not have an interest in the retained money. *Id.* at 583-84.

In this situation, Lyrick, like the government in *Pearlman*, no longer had a right to $500,000 it possessed. Under the above analysis, Safeco's right of subrogation to the rights of Big Idea existed at the time Safeco posted the Bond, before the filing of Big Idea's bankruptcy petition. As a result, the $500,000 Safeco paid in full is not property of Big Idea's bankruptcy estate. Therefore, the Court should distribute the $500,000 to Safeco due to Safeco's right of subrogation.

Safeco's lack of a security interest in Big Idea's property does not defeat its subrogation rights or its claim to the $500,000. In *Interfirst Bank Dallas, N.A.,* the court found that the surety for the contractor had a greater right to retained contract proceeds than

-17-

the bank that had a perfected security interest in the contractor's accounts receivable. 774 S.W.2d at 397-98. The court stated that when the contractor had given the bank a security interest in its accounts receivable, the contractor's rights were already subrogated to the surety's rights. *Id.* Likewise in *Trinity Universal Ins. Co v. Bellmead State Bank* a surety for a contractor had a greater right to retained contract proceeds through his equitable right of subrogation than a judgment creditor who had attempted to garnish such proceeds. 396 S.W.2d 163, 169 (Tex. Civ. App. 1965).

While addressing various bond issues, numerous courts have found that bonds posted to stay execution on a judgment, as well as other types of bonds, are not property of a bankruptcy estate. *Duplitronics, Inc. v. Concept Design Elecs. & Mfg, Inc. (In re Duplitronics, Inc.)*, 183 B.R. 1010, 1015 (N.D. Ill. 1995); *State of Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.*, 660 F.2d 1108, 1113 (6th Cir. 1981); *Webungs Und Commerz Union Austalt v. Collector's Guild, Ltd.*, 147 B.R. 317, 322 (S.D.N.Y. 1992); *In re Goldsby*, 51 F.Supp. 849, 850 (S.D. Fla. 1943). Furthermore, courts have found that a bond is not the property of a bankruptcy estate even when the bond is secured by the debtor's property. *Keene Corp . v. Acstar Ins. Co. (In re Keene Corp.)*, 162 B.R. 935, 942 (Bankr. S.D.N.Y. 1994); *McLean Trucking Co. v. Dept. of Indus. Relations (In re McLean Trucking Co.)*, 74 B.R. 820, 827 (Bankr. W.D.N.C. 1987); *In re M.J. Sales & Distrib. Co.*, 25 B.R. 608, 616-17 (Bankr. S.D.N.Y. 1982); *Loeb v. Am. Druggists' Ins. Co. (In re Hathaway's Liquidation & Appraisers)*, 1 B.R. 189, 192 (Bankr. N.D. Ga. 1979). While these cases do not directly address the factual situation presented in this case, they do

-18-

support the Court's conclusion that the $500,000 is not property of the bankruptcy estate and therefore, should be distributed to Safeco under the cited Texas case law.

Turning to the arguments of the Creditor Trust, the Creditor Trust first contends that the $500,000 is an asset of the bankruptcy estate and should be distributed under Big Idea's plan of liquidation. The Creditor Trust argues that a surety can only look to the principal for repayment of a debt that the surety paid on the principal's behalf. The Court rejects this argument because the Creditor Trust does not cite any cases for this proposition that apply Texas law. Rather, the Creditor Trust cites to a New York case to support its position. *See Garr v. Martin*, 20 N.Y. 306 (N.Y. 1859). Additionally, the conclusion in *Garr v. Martin* that the surety can only look to its principal for repayment is contrary to the Supreme Court's analysis in *Pearlman*.

Moreover, the Creditor Trust admittedly cites a number of federal cases involving letters of credit rather than bonds to support its position. *See Barclay's Bank PLC v. Dresdner Bank Lateinamerika A.G. (In re Lancaster Steel Co.)*, 284 B.R. 152 (S.D. Fla. 2002) (applying New York letter of credit law); *PNC Bank, N.A. v. Spring Ford Indus., Inc. (In re Spring Ford Indus., Inc.)*, No. 02-15015DWS, 04-0479, 2005 WL 984180 (Bankr. E.D. Pa. April 19, 2005) (applying Pennsylvania law and specific language in the contract between the parties); *Two Trees v. Builders Transp., Inc.*, 471 F.3d 1178 (11th Cir. 2006) (applying South Carolina law). In a suretyship, one contract defines both the parties' rights and obligations as well as the surety's rights and obligations. *Republic Nat'l Bank of Dallas v. Nw. Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 114 (Tex. 1978). Under a letter of credit, on the other hand, an independent contract defines the rights and obligations of the issuer of

-19-

the letter of credit to the beneficiary. *Id.* Letters of credit are not the functional equivalent

of a surety bond relationship under Texas law. The case law on letters of credit cited by the

Creditor Trust is not applicable and is inapposite to this matter. Thus, the Court rejects the

Creditor Trust's position that a surety can only look to the principal for repayment of a debt

the surety paid on the principal's behalf.

Second, the Creditor Trust argues that granting Safeco the right of subrogation would

be unjust. The Court rejects this argument. Subrogation is an equitable right that will not

be granted when it would serve an injustice. *United States v. Inter-Bay Towing Co.*, No. H-

03-5727, 2005 U.S. Dist. LEXIS 41974, at \*28-29 (S.D. Tex. Aug. 8, 2005). The Creditor

Trust asserts that Safeco should not in equity be granted the right of subrogation for three

reasons. First, Safeco did not exercise all its rights under the Indemnity Agreement by failing

to demand security, failing to exercise its right to appeal the judgment, failing to appeal other

final orders, and failing to post a supersedeas bond when Big Idea decided to appeal the

judgment. Second, Safeco did not contract for the right to be reimbursed upon reversal of

the judgment. Third, Safeco did not appeal the judgment on behalf of Big Idea. The Creditor

Trust successfully prosecuted the appeal so Safeco should not reap the benefit.

As to the first reason, while Safeco certainly could have better protected itself had it

obtained security, Safeco did demand security from Big Idea and Big Idea failed to comply

and thereby breached its duty under the Indemnity Agreement. As to Safeco's other rights

under the Indemnity Agreement, Safeco was under no obligation to undertake such tasks.

These points do not demonstrate that Safeco breached any of its duties under the Indemnity

Agreement. On the contrary, it paid out the full amount it contracted to pay under the

-20-

Indemnity Agreement. As to the second reason, the right of subrogation does not depend on the provisions of the contract between the parties; it is implied in equity. *Interfirst Bank Dallas, N.A.*, 774 S.W.2d at 397. Moreover, general provision three in the Indemnity Agreement expressly gives Safeco every right, defense, or remedy a personal surety without compensation would have, including the right of subrogation. (Statement of Material Uncontested Facts Ex. D, p. 14, General Agreement of Indemnity.) As to the third reason, having satisfied its obligations to Big Idea under the Indemnity Agreement and paid the full amount owed thereunder to Lyrick, Safeco had much less incentive to appeal the over $10,000,000 judgment than did the ultimately victorious Creditor Trust whose interest substantially exceeded Safeco's interest in having the jury verdict and judgment reversed. The Creditor Trust is not losing all benefit of the appeal if the Court distributes the $500,000 to Safeco. Lyrick no longer has a $10,000,000 claim against the estate, leaving more of the remaining estate assets for other unsecured creditors' dividends. Big Idea failed to perform its obligation under the Bond and Safeco performed for Big Idea and paid in full as the Bond required. The balance of the equities therefore favors Safeco in this situation. Thus, the Court rejects the Creditor Trust's contention that distributing the $500,000 to Safeco under its equitable right of subrogation would be unjust. Had Big Idea paid the $500,000 or some portion thereof from its assets, this argument might have more weight.

## V. **CONCLUSION**

For the foregoing reasons, the Court grants the motion of Safeco for summary judgment. The remaining issues raised by Lyrick's setoff claim of $75,000 against the

-21-

$500,000 Bond proceeds and its counterclaim against the Creditor Trust are reserved for further hearing and determination.  A status hearing thereon is set for August 30, 2007 at 9:30 a.m.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.


ENTERED:


DATE: ___1/24/7___          _____
                            John H. Squires
                            United States Bankruptcy Judge


cc: See attached Service List

## SERVICE LIST

### Big Idea Liquidating Creditor Trust v.
### Safeco Insurance Company of America and Lyrick Studios, Inc.
#### Adversary No.  07 A 00092

Matthew T. Gensburg, Esq.
Amanda K. Grace, Esq.
Greenberg Traurig, LLP
77 W. Wacker Drive
Suite 2400
Chicago, IL 60601

Katherine H. Harris, Esq.
Timothy W. Brink, Esq.
Lord, Bissell & Brook, LLP
111 S. Wacker Drive
Chicago, IL 60606

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

T. Scott Leo, Esq.
Jennifer Watt, Esq.
Leo & Weber, P.C.
1 N. LaSalle Street
Suite 3600
Chicago, IL 60602

Charles P. Schulman, Esq.
Sachnoff & Weaver, Ltd.
10 S. Wacker Drive
Chicago, IL 60606